1
2
3
4
5
6              UNITED STATES DISTRICT COURT
7                   DISTRICT OF NEVADA
8                          * * *

9  BULMARO MENDEZ, individually, and on
   behalf of all others similarly situated;
10 FRANCISCO AMAYA, individually, and on         2:09-CV-02332-LRH-RJJ
   behalf of all others similarly situated; JUAN
11 BARRERA, individually, and on behalf of all
   others similarly situated; CARLOS GOMEZ,      ORDER
12 individually, and on behalf of all others
   similarly situated; JOSE L. GONZALEZ,
13 individually, and on behalf of all others
   similarly situated; JOSE M. GONZALEZ,
14 individually, and on behalf of all others
   similarly situated; JUAN GUZMAN,
15 individually, and on behalf of all others
   similarly situated; ALBERTO LOPEZ,
16 individually, and on behalf of all others
   similarly situated; RAUL LOZANO,
17 individually, and on behalf of all others
   similarly situated; JOSE ORTIZ, individually,
18 and on behalf of all others similarly situated;
   EDMUNDO SANTILLAN, individually, and
19 on behalf of all others similarly situated,

20              Plaintiffs,

21 v.

22 REINFORCING IRONWORKERS UNION
   LOCAL 416; INTERNATIONAL
23 ASSOCIATION OF BRIDGE,
   STRUCTURAL, ORNAMENTAL, AND
24 REINFORCING IRON WORKERS,

25              Defendants.

26

Before the court are Defendant International Association of Bridge, Structural, Ornamental and Reinforcing Ironworkers' ("International") Motion for Summary Judgment (#58[1]), and Defendant Reinforcing Iron Workers Union Local 416's ("Local 416") Motion for Summary Judgment and Adjudication (#63). Plaintiffs filed a consolidated opposition (#70), and in response International filed a reply (#71) and Local 416 filed a reply (#72) and objections (#73).

Also before the court is International's Motion for Hearing pursuant to Local Rule 7056 (#60). The rule relied upon is a Local Rule of Bankruptcy Practice and is therefore inapplicable to this proceeding. *See* LR 7056; *see also* LR 1001. Construing the motion instead as a request for a hearing under LR 78-2, the court finds International's motion for summary judgment suitable for decision without oral argument and will therefore deny the request.

I.     **Facts and Procedural History**

This action was brought by eleven Hispanic ironworkers ("Plaintiffs") against their union, Local 416, and its parent organization, International, (collectively "Defendants") for alleged racial discrimination and retaliation in violation of 42 U.S.C. § 1981. Plaintiffs also seek to represent a class of all current and former Hispanic members of Defendants that were subjected to discrimination; however, no motion for class certification has yet been filed.

Plaintiffs allege Local 416 denied them gainful employment by discriminating against them in its job referral system on account of race and by informing employers of their identities, often resulting in their termination. Local 416 also allegedly subjected Plaintiffs to abuse and harassment, including racial slurs by the union's business agent, Donnie Grayman, and his accusations and assumptions that Plaintiffs could not work legally in the United States and "should go back to Mexico." Local 416 also allegedly retaliated against Plaintiffs following their complaints to International about the union's discriminatory practices. Plaintiffs further allege that

---

[1]Refers to the court's docket entry number.

2

International is liable under § 1981 for tacitly acquiescing in and failing to properly investigate or remedy the local union's discriminatory practices.

## II.     Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, affidavits or declarations, stipulations, admissions, and other materials in the record show that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the initial burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a

scintilla of evidence in support of the party's position is insufficient to establish a genuine dispute; there must be evidence on which a jury could reasonably find for the party. *Id.* at 252.

### III. Discussion

Section 1981 prohibits racial discrimination in the making and enforcement of contracts by both public and private actors. *See* 42 U.S.C. § 1981(a) & (c); *St. Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609 (1987). The term "make and enforce contracts," although construed narrowly prior to the Civil Rights Act of 1991, is now broadly defined to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b); *see Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 373 (2004) (finding that hostile work environment, wrongful discharge, and refusal to transfer claims are cognizable under § 1981, as amended in 1991).

**A. Local 416**

In their motion, Local 416 contends that Plaintiffs cannot establish they were denied employment opportunities through any discriminatory application of its dispatch procedures. Addressing each plaintiff individually, Local 416 argues the evidence establishes that the union followed the procedures set forth in its Master Agreement for dispatching members to jobs from the out-of-work list, thus negating any claim of discrimination or retaliation. Local 416 further contends that there is no evidence to support Plaintiffs' allegations that they were prevented from paying dues or maintaining their positions on the out-of-work list.

In opposition, Plaintiffs fail to rebut, or even substantively address, Local 416's arguments and evidence that the union in fact followed its dispatch procedures by dispatching Plaintiffs from the out-of-work list in the proper order. Plaintiffs have presented evidence of comments made by Local 416's business manager, Donnie Grayman, implying that Plaintiffs would not receive dispatches at all or in the rightful order and thus raising the specter of discriminatory treatment. Nonetheless, Plaintiffs make no effort to rebut Local 416's evidence and arguments that, despite

4

Grayman's threats, Local 416 in fact properly followed its dispatch procedures. Plaintiffs have therefore failed to raise a genuine issue as to whether they were in fact discriminated against in the dispatch process. Accordingly, to the extent Plaintiffs' discrimination and retaliation claims are based on the denial of employment opportunities related to dispatches, Local 416 is entitled to summary judgment.

Plaintiffs also allege, however, that they were subjected to racially discriminatory treatment by Local 416 in the form of a hostile work environment. The elements of such a claim ordinarily include: (1) the plaintiff was subjected to verbal or physical conduct because of race, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of the employment and create and abusive work environment. *See Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008).

Contrary to Local 416's argument that Plaintiffs failed to raise a hostile work environment claim in their complaint, Plaintiffs' allegations go beyond Local 416's dispatch practices and include specific allegations that Grayman subjected Plaintiffs to verbal abuse and harassment because of their race. On the merits, Local 416 makes no contention that Plaintiffs were not subjected to unwelcome verbal abuse because of race or that the abuse was insufficiently severe or pervasive. Instead, Local 416 argues that a hostile work environment claim cannot be maintained against a union like itself absent proof of interference with an outside employment relationship, thus requiring proof of discriminatory dispatches.

The court disagrees that § 1981 is so restrictive. A union or hiring hall would certainly violate § 1981's prohibition on racial discrimination in the making and enforcement of contracts by limiting membership or benefits on account of race, thus adversely affecting not only the worker's potential employment with outside employers but also the worker's contractual relationship with the union itself. *See Goodman v. Lukens Steel Co.*, 482 U.S. 656, 668-69 (1987). So too may a union or hiring hall violate § 1981's prohibition by discriminating against its members by creating

an abusive environment within the union. *Cf. Anderson v. Pac. Maritime Ass'n*, 336 F.3d 924, 931 (9th Cir. 2003) (concluding that the operator of a dispatch hall could not be held liable as an "employer" for Title VII purposes only because the harassment occurred at the job site, not at the dispatch hall); *see also Jones*, 541 U.S. at 373 (recognizing that a hostile work environment claim states a violation of § 1981).

Local 416 cites no authority for limiting the scope of § 1981's protections of contractual relationships to prohibiting only interference with an actual employment relationship. Nor does the court perceive anything within the statute's broad protections to justify such a limitation. To the contrary, the amended definition of "make and enforce contracts" under § 1981(b) is expansive, and the statute applies to all private and public actors, not merely employers as under Title VII. Thus, "§ 1981 is broader than Title VII in that it protects the right to make and enforce all contracts and to enjoy the benefits of all contractual relationships," which includes, but is not limited to the employee-employer relationship. *Allen v. Mayhew*, 2010 WL 618129, *5 (E.D. Cal. 2010). Local 416's motion for summary judgment will therefore be denied as to Plaintiffs' hostile work environment claim.

Turning to Plaintiffs' retaliation claims, to establish a prima facie case they must show (1) they engaged in protected activity, (2) Local 416 subjected them to an adverse action, and (3) a causal link between the protected activity and the adverse action. *See Manatt v. Bank of Am., NA*, 399 F.3d 792, 800 (9th Cir. 2003). Although such claims more commonly arise in the employment context under Title VII, *e.g., id.*, retaliation claims are also cognizable under § 1981. *See Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1007 (9th Cir. 2011) (citing *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 451 (2008)).

Here, Plaintiffs have produced evidence of retaliation only as to plaintiffs Bulmaro Mendez and Raul Lozano. Accordingly, Local 416 is entitled to summary judgment as to all other plaintiffs.

Mendez' retaliation claim is based on Grayman's categorical refusal as the union representative to investigate Mendez' complaints that he was laid off by his employer the same day he complained about harassment by a co-worker and that the employer had not paid him for all of his time. Local 416 contends that Plaintiffs have failed to present sufficient evidence of a causal connection between Grayman's refusal to investigate Mendez' complaints and a conversation Mendez and Grayman had three to four months earlier, during which they discussed this litigation and Grayman asked, "Do you think I'm a racist?" and Mendez answered, "Yes." Viewing the facts in the light most favorable to Mendez as the nonmoving party, however, Local 416's argument frames the issue too narrowly by failing to consider Mendez' participation in this lawsuit as additional protected activity. Thus, also probative of Grayman's retaliatory motive are the fact that Mendez was still prosecuting this lawsuit at the time Grayman refused to act on his complaints of harassment and retaliation against his employer, and the fact that this lawsuit principally involves claims of harassment and retaliation alleged by Mendez and others against Grayman himself. As Local 416 has failed to present any evidence or argument to establish a legitimate, non-retaliatory reason for Grayman's conduct, summary judgment is inappropriate. Accordingly, Local 416's motion will be denied as to Mendez' retaliation claim.

As to Lozano, Plaintiffs have presented evidence that approximately one week after the April 2010 Early Neutral Evaluation in this case, which Grayman and Lozano both attended, Grayman visited Lozano's jobsite and asked him about the allegations, and Lozano referred Grayman to his attorney. About one week later, Lozano was laid off by his employer. Plaintiffs present no evidence of any actual involvement by Grayman in Lozano's termination, however, and it is undisputed that Lozano was laid off along with another worker who is not a party to this case. Given Lozano's burden of proof at trial, such evidence standing alone is insufficient to support a finding that Grayman's mere conversation with Lozano constituted an adverse employment action, or that a causal connection exists between Lozano participating in this lawsuit and being laid off by

1 his employer.  Accordingly, Local 416 is entitled to summary judgment on Lozano's retaliation
2 claim.

**B.  International**

In their second cause of action, Plaintiffs allege that International engaged in racial discrimination in violation of § 1981 by breaching its obligation to adequately investigate Plaintiffs' complaints about Local 416's misconduct and thus "tacitly acquiescing" in the union's discriminatory practices.  International moves for summary judgment based on essentially two contentions: first, it cannot be held vicariously liable for any misconduct by Local 416 because no agency relationship exists; and second, it engaged in no intentional discrimination.

Plaintiffs make no argument that International may be held vicariously liable for Local 416's conduct based on an agency relationship.  Any such claim is therefore waived.

Instead, Plaintiffs contend that International is independently liable for failing to act in opposition to the discriminatory practices of Local 416 as one of its members, despite the lack of an agency relationship.  As Plaintiffs contend, "a labor organization may in some circumstances have an obligation actively to oppose discriminatory conduct on the part of individuals or entities with which it has no agency relationship." *Berger v. Iron Workers Reinforced Rodmen Local 201*, 843 F.2d 1395, 1429 (D.C. Cir. 1988).  For instance, the Supreme Court has held that "a collective bargaining agent could not, without violating Title VII and § 1981, follow a policy of refusing to file grievable racial discrimination claims however strong they might be and however sure the agent was that the employer was discriminating [on the basis of race]," regardless of whether the union itself was motivated by any racial animus in adopting the policy. *Goodman*, 482 U.S. at 668-69.  Also prohibited is "tacit union acquiescence in an employer's discriminatory practices" in contravention of the union's "affirmative . . . obligation" as bargaining agent "to negotiate actively for nondiscriminatory treatment in aid of its [minority] members. *Macklin v. Spector Freight Sys., Inc.*, 478 F.2d 979, 989 (D.C. Cir. 1973).  Thus, "in negotiating as well as in administering a

8

contract a union is obliged to protect all those it represents and may not consent to provisions or take positions that discriminate on racial grounds against some of its people." *Id.* (citing *Steele v. Louisville & Nashville R. Co.*, 323 U.S. 192 (1944)).

But while Plaintiffs' legal theory is well-supported, the evidence produced is lacking. There is no evidence before the court showing that International had a policy of ignoring or intentionally ignored Plaintiffs' grievances about discriminatory treatment by their local union, Local 416. *Cf. Goodman*, 482 U.S. at 669. Quite the contrary, International has presented uncontroverted evidence that it heard and took remedial measures in response to Plaintiffs' complaints. Plaintiffs argue that the harassment continued long after they reported their complaints, thus showing that International's response was inadequate and ineffective; however, the court disagrees. Plaintiffs' only evidence of verbal harassment by Grayman is limited to February 2009, before they complained to International. And while Plaintiffs have produced evidence of retaliation by Grayman against Mendez that occurred in November 2009, after International's remedial measures were implemented, there is no evidence that International refused to accept further complaints or failed to act on any further complaints. *Cf. id.* The mere occurrence of an isolated instance of further misconduct by Local 416 is insufficient to establish that International had intentionally ignored and tacitly acquiesced in Local 416's discriminatory practices in contravention of its affirmative duty to respond to worker complaints. For these reasons, International is entitled to summary judgment.

## IV.  Conclusion

IT IS THEREFORE ORDERED that Defendant International's Motion for Summary Judgment (#58) is GRANTED.

IT IS FURTHER ORDERED that Defendant International's Motion for Hearing (#60) is DENIED.

IT IS FURTHER ORDERED that Defendant Local 416's Motion for Summary Judgment

9

1  and Adjudication (#63) is GRANTED in part and DENIED in part.

2      IT IS FURTHER ORDERED that the remaining parties shall lodge their proposed joint

3  pretrial order within thirty (30) days from entry of this Order.  *See* Local Rule 16-4 and 26-1(e)(5).

4      IT IS SO ORDERED.

5      DATED this 19th day of December, 2011.

8      _____
    LARRY R. HICKS
    UNITED STATES DISTRICT JUDGE