1

2

3

4

5

6                          UNITED STATES DISTRICT COURT

7                                 DISTRICT OF NEVADA

8                                         * * *
                                            )
9    BULMARO MENDEZ, individually, and on   )
     behalf of all others similarly situated; )
10   FRANCISCO AMAYA, individually, and on  )        2:09-CV-02332-LRH-RJJ
     behalf of all others similarly situated; JUAN )
11   BARRERA, individually, and on behalf of all )
     others similarly situated; CARLOS GOMEZ, )
12   individually, and on behalf of all others )      ORDER
     similarly situated; JOSE L. GONZALEZ,   )
13   individually, and on behalf of all others )
     similarly situated; JOSE M. GONZALEZ,   )
14   individually, and on behalf of all others )
     similarly situated; JUAN GUZMAN,        )
15   individually, and on behalf of all others )
     similarly situated; ALBERTO LOPEZ,      )
16   individually, and on behalf of all others )
     similarly situated; RAUL LOZANO,        )
17   individually, and on behalf of all others )
     similarly situated; JOSE ORTIZ, individually, )
18   and on behalf of all others similarly situated; )
     EDMUNDO SANTILLAN, individually, and )
19   on behalf of all others similarly situated, )
                                            )
20                  Plaintiffs,             )
                                            )
21   v.                                     )
                                            )
22   REINFORCING IRONWORKERS UNION          )
     LOCAL 416; INTERNATIONAL               )
23   ASSOCIATION OF BRIDGE,                 )
     STRUCTURAL, ORNAMENTAL, AND            )
24   REINFORCING IRON WORKERS,              )
                                            )
25                  Defendants.             )
     _____ )

26

1    Before the court are Defendant International Association of Bridge, Structural, Ornamental

2    and Reinforcing Ironworkers' ("International") Motion for Summary Judgment (#58[1]), and

3    Defendant Reinforcing Iron Workers Union Local 416's ("Local 416") Motion for Summary

4    Judgment and Adjudication (#63).  Plaintiffs filed a consolidated opposition (#70), and in response

5    International filed a reply (#71) and Local 416 filed a reply (#72) and objections (#73).

6    Also before the court is International's Motion for Hearing pursuant to Local Rule 7056

7    (#60).  The rule relied upon is a Local Rule of Bankruptcy Practice and is therefore inapplicable to

8    this proceeding.  *See* LR 7056; *see also* LR 1001.  Construing the motion instead as a request for a

9    hearing under LR 78-2, the court finds International's motion for summary judgment suitable for

10   decision without oral argument and will therefore deny the request.

11   **I.    Facts and Procedural History**

12   This action was brought by eleven Hispanic ironworkers ("Plaintiffs") against their union,

13   Local 416, and its parent organization, International, (collectively "Defendants") for alleged racial

14   discrimination and retaliation in violation of 42 U.S.C. § 1981.  Plaintiffs also seek to represent a

15   class of all current and former Hispanic members of Defendants that were subjected to

16   discrimination; however, no motion for class certification has yet been filed.

17   Plaintiffs allege Local 416 denied them gainful employment by discriminating against them

18   in its job referral system on account of race and by informing employers of their identities, often

19   resulting in their termination.  Local 416 also allegedly subjected Plaintiffs to abuse and

20   harassment, including racial slurs by the union's business agent, Donnie Grayman, and his

21   accusations and assumptions that Plaintiffs could not work legally in the United States and "should

22   go back to Mexico."  Local 416 also allegedly retaliated against Plaintiffs following their

23   complaints to International about the union's discriminatory practices.  Plaintiffs further allege that

24

25        [1]Refers to the court's docket entry number.

26
                                                    2

1    International is liable under § 1981 for tacitly acquiescing in and failing to properly investigate or

2    remedy the local union's discriminatory practices.

3    **II.    Legal Standard**

4           Summary judgment is appropriate only when the pleadings, depositions, answers to

5    interrogatories, affidavits or declarations, stipulations, admissions, and other materials in the record

6    show that "there is no genuine issue as to any material fact and the movant is entitled to judgment

7    as a matter of law."  Fed. R. Civ. P. 56(a).  In assessing a motion for summary judgment, the

8    evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the

9    light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio*

10   *Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154

11   (9th Cir. 2001).

12          The moving party bears the initial burden of informing the court of the basis for its motion,

13   along with evidence showing the absence of any genuine issue of material fact.  *Celotex Corp. v.*

14   *Catrett*, 477 U.S. 317, 323 (1986).  On those issues for which it bears the burden of proof, the

15   moving party must make a showing that is "sufficient for the court to hold that no reasonable trier

16   of fact could find other than for the moving party."  *Calderone v. United States*, 799 F.2d 254, 259

17   (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

18          To successfully rebut a motion for summary judgment, the non-moving party must point to

19   facts supported by the record which demonstrate a genuine issue of material fact.  *Reese v.*

20   *Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000).  A "material fact" is a fact "that might

21   affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

22   242, 248 (1986).  Where reasonable minds could differ on the material facts at issue, summary

23   judgment is not appropriate.  *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983).  A dispute

24   regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could

25   return a verdict for the nonmoving party."  *Liberty Lobby*, 477 U.S. at 248.  The mere existence of a

26

1  scintilla of evidence in support of the party's position is insufficient to establish a genuine dispute;

2  there must be evidence on which a jury could reasonably find for the party.  *Id.* at 252.

3  **III.   Discussion**

4          Section 1981 prohibits racial discrimination in the making and enforcement of contracts by

5  both public and private actors.  *See* 42 U.S.C. § 1981(a) & (c); *St. Francis Coll. v. Al-Khazraji*, 481

6  U.S. 604, 609 (1987).  The term "make and enforce contracts," although construed narrowly prior

7  to the Civil Rights Act of 1991, is now broadly defined to include "the making, performance,

8  modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and

9  conditions of the contractual relationship."  42 U.S.C. § 1981(b); *see Jones v. R.R. Donnelley &*

10 *Sons Co.*, 541 U.S. 369, 373 (2004) (finding that hostile work environment, wrongful discharge,

11 and refusal to transfer claims are cognizable under § 1981, as amended in 1991).

12         **A.  Local 416**

13         In their motion, Local 416 contends that Plaintiffs cannot establish they were denied

14 employment opportunities through any discriminatory application of its dispatch procedures.

15 Addressing each plaintiff individually, Local 416 argues the evidence establishes that the union

16 followed the procedures set forth in its Master Agreement for dispatching members to jobs from the

17 out-of-work list, thus negating any claim of discrimination or retaliation.  Local 416 further

18 contends that there is no evidence to support Plaintiffs' allegations that they were prevented from

19 paying dues or maintaining their positions on the out-of-work list.

20         In opposition, Plaintiffs fail to rebut, or even substantively address, Local 416's arguments

21 and evidence that the union in fact followed its dispatch procedures by dispatching Plaintiffs from

22 the out-of-work list in the proper order.  Plaintiffs have presented evidence of comments made by

23 Local 416's business manager, Donnie Grayman, implying that Plaintiffs would not receive

24 dispatches at all or in the rightful order and thus raising the specter of discriminatory treatment.

25 Nonetheless, Plaintiffs make no effort to rebut Local 416's evidence and arguments that, despite

26

4

1    Grayman's threats, Local 416 in fact properly followed its dispatch procedures.  Plaintiffs have

2    therefore failed to raise a genuine issue as to whether they were in fact discriminated against in the

3    dispatch process.  Accordingly, to the extent Plaintiffs' discrimination and retaliation claims are

4    based on the denial of employment opportunities related to dispatches, Local 416 is entitled to

5    summary judgment.

6         Plaintiffs also allege, however, that they were subjected to racially discriminatory treatment

7    by Local 416 in the form of a hostile work environment.  The elements of such a claim ordinarily

8    include: (1) the plaintiff was subjected to verbal or physical conduct because of race, (2) the

9    conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the

10   conditions of the employment and create and abusive work environment.  *See Johnson v. Riverside*

11   *Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008).

12        Contrary to Local 416's argument that Plaintiffs failed to raise a hostile work environment

13   claim in their complaint, Plaintiffs' allegations go beyond Local 416's dispatch practices and

14   include specific allegations that Grayman subjected Plaintiffs to verbal abuse and harassment

15   because of their race.  On the merits, Local 416 makes no contention that Plaintiffs were not

16   subjected to unwelcome verbal abuse because of race or that the abuse was insufficiently severe or

17   pervasive.  Instead, Local 416 argues that a hostile work environment claim cannot be maintained

18   against a union like itself absent proof of interference with an outside employment relationship,

19   thus requiring proof of discriminatory dispatches.

20        The court disagrees that § 1981 is so restrictive.  A union or hiring hall would certainly

21   violate § 1981's prohibition on racial discrimination in the making and enforcement of contracts by

22   limiting membership or benefits on account of race, thus adversely affecting not only the worker's

23   potential employment with outside employers but also the worker's contractual relationship with

24   the union itself.  *See Goodman v. Lukens Steel Co.*, 482 U.S. 656, 668-69 (1987).  So too may a

25   union or hiring hall violate  § 1981's prohibition by discriminating against its members by creating

26

5

1  an abusive environment within the union.  *Cf. Anderson v. Pac. Maritime Ass'n*, 336 F.3d 924, 931

2  (9th Cir. 2003) (concluding that the operator of a dispatch hall could not be held liable as an

3  "employer" for Title VII purposes only because the harassment occurred at the job site, not at the

4  dispatch hall); *see also Jones*, 541 U.S. at 373 (recognizing that a hostile work environment claim

5  states a violation of § 1981).

6       Local 416 cites no authority for limiting the scope of § 1981's protections of contractual

7  relationships to prohibiting only interference with an actual employment relationship.  Nor does the

8  court perceive anything within the statute's broad protections to justify such a limitation.  To the

9  contrary, the amended definition of "make and enforce contracts" under § 1981(b) is expansive,

10  and the statute applies to all private and public actors, not merely employers as under Title VII.

11  Thus, "§ 1981 is broader than Title VII in that it protects the right to make and enforce all contracts

12  and to enjoy the benefits of all contractual relationships," which includes, but is not limited to the

13  employee-employer relationship.  *Allen v. Mayhew*, 2010 WL 618129, *5 (E.D. Cal. 2010).  Local

14  416's motion for summary judgment will therefore be denied as to Plaintiffs' hostile work

15  environment claim.

16       Turning to Plaintiffs' retaliation claims, to establish a prima facie case they must show (1)

17  they engaged in protected activity, (2) Local 416 subjected them to an adverse action, and (3) a

18  causal link between the protected activity and the adverse action.  *See Manatt v. Bank of Am., NA*,

19  399 F.3d 792, 800 (9th Cir. 2003).  Although such claims more commonly arise in the employment

20  context under Title VII, *e.g., id.*, retaliation claims are also cognizable under § 1981.  *See Johnson*

21  *v. Lucent Techs. Inc.*, 653 F.3d 1000, 1007 (9th Cir. 2011) (citing *CBOCS West, Inc. v. Humphries*,

22  553 U.S. 442, 451 (2008)).

23       Here, Plaintiffs have produced evidence of retaliation only as to plaintiffs Bulmaro Mendez

24  and Raul Lozano.  Accordingly, Local 416 is entitled to summary judgment as to all other

25  plaintiffs.

26

1    Mendez' retaliation claim is based on Grayman's categorical refusal as the union

2 representative to investigate Mendez' complaints that he was laid off by his employer the same day

3 he complained about harassment by a co-worker and that the employer had not paid him for all of

4 his time.  Local 416 contends that Plaintiffs have failed to present sufficient evidence of a causal

5 connection between Grayman's refusal to investigate Mendez' complaints and a conversation

6 Mendez and Grayman had three to four months earlier, during which they discussed this litigation

7 and Grayman asked, "Do you think I'm a racist?" and Mendez answered, "Yes."  Viewing the facts

8 in the light most favorable to Mendez as the nonmoving party, however, Local 416's argument

9 frames the issue too narrowly by failing to consider Mendez' participation in this lawsuit as

10 additional protected activity.  Thus, also probative of Grayman's retaliatory motive are the fact that

11 Mendez was still prosecuting this lawsuit at the time Grayman refused to act on his complaints of

12 harassment and retaliation against his employer, and the fact that this lawsuit principally involves

13 claims of harassment and retaliation alleged by Mendez and others against Grayman himself.  As

14 Local 416 has failed to present any evidence or argument to establish a legitimate, non-retaliatory

15 reason for Grayman's conduct, summary judgment is inappropriate.  Accordingly, Local 416's

16 motion will be denied as to Mendez' retaliation claim.

17    As to Lozano, Plaintiffs have presented evidence that approximately one week after the

18 April 2010 Early Neutral Evaluation in this case, which Grayman and Lozano both attended,

19 Grayman visited Lozano's jobsite and asked him about the allegations, and Lozano referred

20 Grayman to his attorney.  About one week later, Lozano was laid off by his employer.  Plaintiffs

21 present no evidence of any actual involvement by Grayman in Lozano's termination, however, and

22 it is undisputed that Lozano was laid off along with another worker who is not a party to this case.

23 Given Lozano's burden of proof at trial, such evidence standing alone is insufficient to support a

24 finding that Grayman's mere conversation with Lozano constituted an adverse employment action,

25 or that a causal connection exists between Lozano participating in this lawsuit and being laid off by

26

7

1  his employer.  Accordingly, Local 416 is entitled to summary judgment on Lozano's retaliation

2  claim.

3  **B.  International**

4  In their second cause of action, Plaintiffs allege that International engaged in racial

5  discrimination in violation of § 1981 by breaching its obligation to adequately investigate

6  Plaintiffs' complaints about Local 416's misconduct and thus "tacitly acquiescing" in the union's

7  discriminatory practices.  International moves for summary judgment based on essentially two

8  contentions: first, it cannot be held vicariously liable for any misconduct by Local 416 because no

9  agency relationship exists; and second, it engaged in no intentional discrimination.

10  Plaintiffs make no argument that International may be held vicariously liable for Local 416's

11  conduct based on an agency relationship.  Any such claim is therefore waived.

12  Instead, Plaintiffs contend that International is independently liable for failing to act in

13  opposition to the discriminatory practices of Local 416 as one of its members, despite the lack of an

14  agency relationship.  As Plaintiffs contend, "a labor organization may in some circumstances have

15  an obligation actively to oppose discriminatory conduct on the part of individuals or entities with

16  which it has no agency relationship."  *Berger v. Iron Workers Reinforced Rodmen Local 201*, 843

17  F.2d 1395, 1429 (D.C. Cir. 1988).  For instance, the Supreme Court has held that "a collective

18  bargaining agent could not, without violating Title VII and § 1981, follow a policy of refusing to

19  file grievable racial discrimination claims however strong they might be and however sure the

20  agent was that the employer was discriminating [on the basis of race]," regardless of whether the

21  union itself was motivated by any racial animus in adopting the policy.  *Goodman*, 482 U.S. at

22  668-69.  Also prohibited is "tacit union acquiescence in an employer's discriminatory practices" in

23  contravention of the union's "affirmative . . . obligation" as bargaining agent "to negotiate actively

24  for nondiscriminatory treatment in aid of its [minority] members.  *Macklin v. Spector Freight Sys.,*

25  *Inc.*, 478 F.2d 979, 989 (D.C. Cir. 1973).  Thus, "in negotiating as well as in administering a

26

8

1   contract a union is obliged to protect all those it represents and may not consent to provisions or

2   take positions that discriminate on racial grounds against some of its people." *Id.* (citing *Steele v.*

3   *Louisville & Nashville R. Co.*, 323 U.S. 192 (1944)).

4          But while Plaintiffs' legal theory is well-supported, the evidence produced is lacking.

5   There is no evidence before the court showing that International had a policy of ignoring or

6   intentionally ignored Plaintiffs' grievances about discriminatory treatment by their local union,

7   Local 416. *Cf. Goodman*, 482 U.S. at 669. Quite the contrary, International has presented

8   uncontroverted evidence that it heard and took remedial measures in response to Plaintiffs'

9   complaints. Plaintiffs argue that the harassment continued long after they reported their

10  complaints, thus showing that International's response was inadequate and ineffective; however,

11  the court disagrees. Plaintiffs' only evidence of verbal harassment by Grayman is limited to

12  February 2009, before they complained to International. And while Plaintiffs have produced

13  evidence of retaliation by Grayman against Mendez that occurred in November 2009, after

14  International's remedial measures were implemented, there is no evidence that International refused

15  to accept further complaints or failed to act on any further complaints. *Cf. id.* The mere occurrence

16  of an isolated instance of further misconduct by Local 416 is insufficient to establish that

17  International had intentionally ignored and tacitly acquiesced in Local 416's discriminatory

18  practices in contravention of its affirmative duty to respond to worker complaints. For these

19  reasons, International is entitled to summary judgment.

20  **IV.    Conclusion**

21          IT IS THEREFORE ORDERED that Defendant International's Motion for Summary

22  Judgment (#58) is GRANTED.

23          IT IS FURTHER ORDERED that Defendant International's Motion for Hearing (#60) is

24  DENIED.

25          IT IS FURTHER ORDERED that Defendant Local 416's Motion for Summary Judgment

26

1  and Adjudication (#63) is GRANTED in part and DENIED in part.

2        IT IS FURTHER ORDERED that the remaining parties shall lodge their proposed joint

3  pretrial order within thirty (30) days from entry of this Order.  *See* Local Rule 16-4 and 26-1(e)(5).

4        IT IS SO ORDERED.

5        DATED this 19th day of December, 2011.

6

7

8                                          _____
                                           LARRY R. HICKS

9                                          UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26