UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * * * *

BULMARO MENDEZ, individually, et al.,  )
)  2:09-cv-02332-LRH-NJK
                  Plaintiffs,  )
)  ORDER
vs.  )
)
REINFORCING IRONWORKERS UNION  )
LOCAL 416, et al.,  )
)
                  Defendants.  )
)

      Before the court is Plaintiffs' Motion for Attorney's Fees and Costs (#155[1]). Defendant Reinforcing Ironworkers Union Local 416 ("Local 416") has objected to Plaintiffs' attorney's fees calculations (#158), and Plaintiffs have replied (#162).

**I.    Facts and Procedural History**

      On December 9, 2009, the thirteen original plaintiffs filed suit against Defendant Local 416 and against Defendant International Association of Bridge, Structural, Ornamental, and Reinforcing Ironworkers ("International") (#1), alleging racial discrimination by creating a hostile work environment and retaliating against Plaintiffs by not dispatching them to jobs as required by the International's union procedures, in violation of 42 U.S.C. § 1981. On December 20, 2011, this court granted in part and denied in part Defendants' Motion for Summary Judgment (#58). As a result, all claims against International were dismissed, as were the claims against Local 416 as they applied to retaliation based on failure to properly dispatch Plaintiffs to employment opportunities.

---

[1] Refers to the court's docket entry number.

However, only six of the thirteen plaintiffs appeared at trial on April 15, 2013. The other seven plaintiffs' claims were dismissed, while the six appearing plaintiffs won their remaining § 1981 claims. On April 18, 2013, the jury awarded them $1500.00 each in compensatory damages and $10,000.00 each in punitive damages. Judgment was entered April 22, 2013. On May 3, 2013, Plaintiffs filed the instant Motion, seeking $124,170.00 in attorney's fees, plus an extra $50,000.00.[2]

## II.   Legal Standard

When an action proceeds under 42 U.S.C. § 1981, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). To determine reasonable costs, the court calculates the "lodestar figure" by multiplying the hours reasonably spent on the case by a reasonable hourly rate. *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). While the lodestar figure is strongly presumed reasonable, the court may, in rare instances, adjust the lodestar to a more reasonable figure in light of any of the factors set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) that are not represented in the lodestar calculation.[3] *Morales v. City of San Rafael*, 96 F.3d 359, 363 n.8 (9th Cir. 1996).

---

[2] In Plaintiffs' Motion for Attorney's Fees (#155), Plaintiffs requested the right to submit supplemental briefing to account for additional time spent on this motion and other future motions. In light of the court's order granting Plaintiffs' Motion, the court grants Plaintiffs the right to submit supplemental briefing.

[3] The twelve *Kerr* factors are the following:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr*, 526 F.2d at 70.

### III. Discussion

#### A. Timeliness

To recover reasonable attorney's fees, the prevailing party must file its motion for the fees within fourteen days of the entry of judgment. Fed. R. Civ. P. 54(d)(2)(B)(i). Local 416 contends Plaintiffs' Motion is untimely because it was filed on May 3, 2013, fifteen days after the jury returned its verdict on April 18. However, the time for filing does not begin to run until the court enters final judgment, which, in this case, was on April 22. LR 54-16(a); *see also Schultz v. Ichimoto*, 2010 WL 3210764, at *1 (E.D. Cal. Aug. 10, 2010). Because Plaintiffs filed their motion within fourteen days of the final judgment entry, it is timely.

#### B. Lodestar Calculation

Based on the documentation Plaintiffs have provided, most of Plaintiffs' lodestar calculations are reasonable, despite Local 416's claims otherwise. First, Local 416 claims Plaintiffs unreasonably included their hours spent on the claims as they related to International. However, Plaintiffs clearly stated they used only time spent toward the claims against Local 416. Plaintiffs indicated where it was difficult to separate time spent between the two, and they reasonably adjusted the time downward to compensate.

Local 416 next claims Plaintiffs unreasonably included hours spent toward claims on which Plaintiffs did not prevail. Though Plaintiffs' claims as they related to discriminatory dispatch were dismissed on summary judgment, they cannot be fairly characterized as completely segregated from Plaintiffs' hostile work environment claims. The time spent for unsuccessful aspects of a plaintiff's claim is not to be reduced when the plaintiff's successful and unsuccessful claims cannot be viewed as discrete. *City of Riverside v. Rivera*, 477 U.S. 561, 568–69 (1986).

Third, Local 416 argues several hours included in the lodestar were not reasonably related to the case. Local 416 does not specify exactly why activities such as discussing the ENE with the court or discussing the case with the EEOC are unrelated to the case, and there does not appear to be any compelling reason to believe they are not reasonably related. Plaintiffs, however, have stipulated that time should be deducted relating to their Motion to Withdraw. While Plaintiffs totaled such time to 2.5 hours, it appears Plaintiffs actually spent 3 hours on the

Motion to Withdraw. *See* Pl.'s Mot. for Atty's Fees (#155), Ex. 1, 12/8/10, 12/17/10, 12/20/10. Therefore, the court deducts 3 hours from Mr. Nicholas Hamilton's total for his time spent on the Motion to Withdraw.

Local 416 then argues much of Plaintiffs' claimed time is excessive. According to Local 416, it should not take 40 minutes to prepare an interrogatory, nor should it take an hour and a half to read six identical, two-page form letters. Including all of the time that goes into preparing interrogatories, it does not seem unreasonable to spend 40 minutes on each. However, the time spent on the form letters may be excessive. All six are to individual Plaintiffs, but are substantively the same. *See* Def.'s Req. for Judicial Notice (#75), Ex. 1; Pl.'s Mot. for Atty's Fees (#155), Ex. 1, 7/1/11–7/5/11. Further, Plaintiffs did not respond to Local 416's objection to this point. The court therefore deducts 1 hour from Ms. Sharon Nelson's total for time spent reading these form letters.

Finally, Local 416 claims the court should further reduce other time entries to more accurately reflect only the work performed on behalf of the six plaintiffs who appeared and prevailed at trial. However, Local 416 does not specify any particular entries it wishes reduced. Instead, it contends for an award of only six-thirteenths of the remaining total to account for the seven plaintiffs missing from trial, resulting in a 46.25-hour reduction.

Local 416's claims are unreasonable for multiple reasons. Plaintiffs have already reduced by several hours most time entries dealing with the seven dismissed plaintiffs. Local 416's claim that further reduction is necessary rests on the unfounded premise that, in general, the marginal time spent on each additional plaintiff in a case is constant and is equal to the marginal time spent for the first plaintiff. In reality, the marginal cost of each additional plaintiff is considerably smaller than the cost of the first plaintiff. In nearly any case, many of the plaintiffs' activities and time spent on those activities would be mostly the same regardless of the number of plaintiffs involved. Consequently, Local 416's request for the court to further reduce Plaintiffs' recorded time is not tenable.

Interestingly, Ms. Nelson's claimed total time spent on the case does not match with a separate addition of each individual time entry. Exhibit 1 of Plaintiffs' Motion for Attorney's

1  Fees (#155) actually calculates her total time spent in 2010 to 8.25 hours less than the sum of the
2  individual entries. Consequently, the court will add 8.25 hours to Ms. Nelson's total to correct
3  this mistake. After including the already mentioned deductions, Ms. Nelson's total hours are
4  increased by 7.25, for a total of 303 hours, and Mr. Hamilton's total hours are reduced by 3, for a
5  total of 84.75 hours. Additionally, though Mr. Graff claimed 4.25 hours at $185.00 per hour, the
6  total amount requested for his work ($726.25) calculates to only $170.88 per hour. *See* Pl.'s Mot.
7  For Atty's Fees (#155), Ex. 1. The court therefore corrects Mr. Graff's total amount to $786.25.

**C. Lodestar Enhancement**

In addition to the $124,170.00, Plaintiffs seek an additional $50,000.00 in fees. This would result in an average of approximately $450.00 per hour for each of Plaintiffs' attorneys.[4] Although it is unreasonable to enhance the lodestar amount by the requested $50,000.00, a smaller $19,695.00 enhancement is appropriate.

If an initial lodestar calculation does not produce a reasonable amount, a court considers any remaining *Kerr* factors not already subsumed in the lodestar calculation to adjust the lodestar to a reasonable amount. *Morales*, 96 F.3d at 363–64. The Supreme Court has held a fee to be reasonable if it "is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kenny A.*, 559 U.S. 542, 130 S. Ct. 1662, 1672 (2010). The court also strongly presumes most, if not all, of the *Kerr* factors, such as the case's novelty and the attorney's performance, are subsumed in the initial lodestar calculation, which is also strongly presumed reasonable. *Id.* at 1673. The party seeking to enhance the lodestar must produce specific evidence to justify the enhancement. *Id.*

Enhancing the lodestar is justified when the hourly rate used in the initial lodestar calculation does not accurately reflect the attorney's "true market value, as demonstrated in part during the litigation." *Id.* at 1674. The lodestar may not reflect the attorney's true market value when the hourly rate's calculation is formulaic and based on only a few similar factors, such as

---

[4] Ms. Nelson claimed 295.75 hours at $350.00 per hour, Mr. Hamilton claimed 87.75 hours at $225.00 per hour, and Mr. Adam Graff claimed 4.25 hours at $185.00 per hour. *See* Pl.'s Mot. for Atty's Fees (#155), Ex. 1.

5

1   the number of years practicing. *Id.* The lodestar may also be enhanced for unusual cases
2   involving an "extraordinary outlay of expenses," "exceptionally protracted" litigation, or
3   "exceptional delay in the payment of fees." *Id.* at 1674–75. Such enhancement, however, must be
4   calculated with a reasonable and objective method. *Id.*

5   Looking at all factors, the court finds the initial lodestar amount insufficient to "induce a
6   capable attorney to undertake the representation" of this particular case. *See id.* at 1672. As
7   Plaintiffs explain, multiple attorneys refused, for several reasons, to represent Plaintiffs. First,
8   many attorneys, in general, feel it is difficult to succeed in claims against unions. Second,
9   Plaintiffs speak only Spanish. To effectively counsel Plaintiffs required incurring significant
10  interpreting costs that would not be recoverable until after the trial, if at all. Finally, proving the
11  amount in damages would have been—and, for Ms. Nelson, was—a difficult task, further
12  dissuading other attorneys from representing Plaintiffs. Because of these factors and Ms.
13  Nelson's superior performance, this is a "rare" and "exceptional" case where the lodestar is not
14  "adequate to attract competent counsel." *Id.* at 1674 (quoting *Blum v. Stenson*, 465 U.S. 886, 897
15  (1984)) (internal quotation marks omitted).

16  Based on the evidence Plaintiffs have produced, it appears that total time spent practicing
17  law is a large, if not the only, factor determining Plaintiffs' attorneys' hourly rates. *See* Pl.'s Mot.
18  for Atty's Fees (#155), Ex. 4. This, however, does not accurately reflect Ms. Nelson's true
19  market value in this case. Ms. Nelson provided evidence that her hourly rate normally ranges
20  from $200.00–400.00. *See id.*, Ex. 4. Additionally, she provided an affidavit of a comparable
21  attorney in the same area of law whose hourly rate normally ranges from $300.00–415.00. *See*
22  *id.*, Ex. 3. Because Ms. Nelson's performance reflects the very best ability in her field, the court
23  increases the lodestar by $19,695.00, which correlates to increasing Ms. Nelson's hourly wage to
24  $415.00 per hour.

25  **IV.   Conclusion**

26  In sum, the court increases Plaintiffs' initial lodestar amount to $126,092.50 to account
27  for the calculation errors. Additionally, the court finds it appropriate to enhance the lodestar
28  amount by $19,695.00 to reflect Plaintiffs' counsel's true market value in this case. Hence, the

6

1  court awards Plaintiffs a total of $145,787.50 in attorney's fees.

3       IT IS THEREFORE ORDERED that Plaintiffs' Motion for Attorney's Fees (#155) is
4  GRANTED. Plaintiffs are awarded $145,787.50.
5       IT IS FURTHER ORDERED that Plaintiffs shall have fourteen (14) days to file
6  supplemental briefing for additional attorney's fees.
7       IT IS SO ORDERED.
8       DATED this 23rd day of August, 2013.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE