UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| BULMARO MENDEZ, et al.,<br><br>           Plaintiffs,<br><br>  v.<br><br>REINFORCING IRONWORKERS UNION<br>LOCAL 416, et al.,<br><br>           Defendants. | 2:09-CV-02332-LRH-NJK<br><br>ORDER |

Before the court is defendant Reinforcing Ironworkers Union Local 416's ("Local 416's") Renewed Motion for Judgment as a Matter of Law or Alternatively for Reduction in Amount of Punitive Damages (#157[1]). Plaintiffs have responded (#161), and Local 416 has replied (#163). Also before the court is Plaintiffs' counsel's unopposed Motion to Withdraw (#143) representation from Plaintiffs who have been dismissed from this action.

**I.    Facts and Procedural History**

Following a four-day trial on Plaintiffs' hostile work environment claim, a jury returned a verdict in favor of Plaintiffs in the amount, for each plaintiff, of $1,500 in compensatory damages and $10,000 in punitive damages. Plaintiffs are six Hispanic ironworkers who alleged that Local 416, their union, discriminated against them on the basis of their race. Local 416's business

---

[1]Refers to the court's docket entry number.

1  representative,[2] Donny Grayman, repeatedly referred to some or all of Plaintiffs as "wetbacks,"
2  "fucking Mexicans," and "Mexican donkeys;" Grayman sprayed air freshener at some of Plaintiffs
3  in Local 416's hiring hall while commenting that "this place stinks;" Grayman repeatedly cursed
4  Plaintiffs as "motherfuckers;" Grayman "playfully" threatened some Plaintiffs with a
5  sledgehammer; and Grayman questioned the legitimacy of certain Plaintiffs' papers, told certain
6  Plaintiffs to "go back to Mexico," and excluded Plaintiffs from the hiring hall, where job openings
7  were publicly posted.

   After finding that this conduct constituted discrimination by virtue of a hostile work
8  environment under 42 U.S.C. § 1981, the jury awarded Plaintiffs a total of $11,500 each. Local 416
9  now challenges the jury's punitive damage award as either contrary to the evidence or so excessive
10 as to violate Local 416's due process rights under the Fourteenth Amendment.

**II.  Discussion**

   Local 416 brings its motion under Federal Rule of Civil Procedure 50(b), having submitted
an oral Rule 50(a) motion at the close of Plaintiffs' case. Upon a properly submitted Rule 50(b)
motion, a jury's award of punitive damages under § 1981 may be overturned "if the evidentiary
prerequisites to such an award are not supported by substantial evidence." *Zhang v. Am. Gem
Seafoods, Inc.*, 339 F.3d 1020, 1041 (9th Cir. 2003) (citation omitted). Such evidentiary
prerequisites include a demonstration that the employer "discriminate[d] in the face of a perceived
risk that its actions [] violate[d] federal law." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536
(1999). "In general," therefore, "intentional discrimination is enough to establish punitive damages
liability." *Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493, 515 (9th Cir.
2000). And "substantial evidence" means "evidence adequate to support the jury's conclusion, even
if it is also possible to draw a contrary conclusion." *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d
951, 963 (9th Cir. 2009) (quoting *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir.2002)). Therefore,

---

[2] This position is elected by the union membership and carries with it some local union leadership responsibilities.

2

1 the court interrogates the record to determine if there is evidence adequate to support the jury's
2 determination that Local 416 discriminated against Plaintiffs in the face of a perceived risk that
3 such discrimination was illegal.

4       The jury's award of punitive damages is supported by substantial evidence. As noted in
5 *Passatino*, the (usually) obvious illegality of intentional discrimination implies that intentional
6 discrimination (usually) takes place "in the face of a perceived risk that such discrimination is
7 illegal." *See* 212 F.3d at 515. The exception to this rule is "when the employer is aware of specific
8 discriminatory conduct at issue, but nonetheless reasonably believes that conduct is lawful." *Id*.
9 Here, however, Local 416 makes no serious attempt to assert its reasonable belief that the hostile
10 work environment created by Grayman through repeated racist and mean-spirited comments and
11 actions constitutes "lawful conduct."

12       Instead, Local 416 argues that Garyman's conduct was not "egregious" in that it did not
13 establish "(1) a pattern of discrimination, (2) spite or malevolence, or (3) blatant disregard for civil
14 obligations." (Local 416's Motion #157, p. 3-4 (quoting *Dudley v. Wal-Mart Stores, Inc.*, 166 F.3d
15 1317, 1322 (11th Cir. 1999)). Yet the "egregious conduct" standard for punitive damages under
16 § 1981a(b)(1) was specifically repudiated by the Supreme Court in *Kolstad*. *Kolstad*, 527 U.S. at
17 536; *see also Passantino,* 212 F.3d at 515 ("[A]lthough egregious conduct could be evidence of
18 intent to break the law, such conduct was not required to establish punitive damages liability.").
19 Because Local 416 has relied on the wrong standard for awarding punitive damages, its arguments
20 for overturning the punitive damages award fail.[3]

21 ──────────

22     [3] Local 416 also contends that Local 416 (as distinct from Grayman himself) did not act
23 egregiously. This appears to be an attempt to develop an *Ellerth/Faragher* defense to Local 416's
vicarious liability for punitive damages (though an attempt that cites the wrong standard for punitive
24 damages liability). *See Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 765 (1998); *Faragher v. City
of Boca Raton,* 524 U.S. 775, 806 (1998). However, Local 416 did not raise this affirmative defense
25 (or include words plausibly suggestive of this defense) in its Answer (#40) or in the Pretrial Order
(#81). *See, e.g.*, *Maalik v. Int'l Union of Elevator Constructors, Local 2*, 437 F.3d 650, 653 (7th Cir.
26 2006) (applying the defense to a mechanic's union's racially discriminatory failure to train). Moreover,

3

Local 416 does not fare any better in arguing for remittitur of the punitive damages award. Local 416 correctly cites the legal standard: a court determines whether a punitive damages award is unconstitutionally excessive by referring to the conduct's reprehensibility, the ratio between compensatory and punitive damages, and awards authorized in comparable cases. *Swinton v. Potomac Corp.*, 270 F.3d 794, 817 (9th Cir. 2001) (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 562 (1996)). In the application of this legal standard, however, Local 416 falters.

Local 416 challenges the reprehensibility and ratio prongs of the *BMW* test, but not the comparable-cases prong. First, Local 416 argues that Grayman's conduct was not "reprehensible" but rather in "bad taste." Yet the *Swinton* court rejected the notion that "highly offensive [racist] language" (there, the word "nigger") could be excused by what might be called the "bad taste" defense. 270 F.3d at 817-18. *See also Pavon v. Swift Transp. Co., Inc.*, 192 F.3d 902, 909 (9th Cir. 1999) (finding defendant's use of slurs like "wetback," "beaner," and "fucking Mexican" against Hispanic plaintiffs reprehensible); *Zhang*, 339 F.3d at 1039 (finding discriminatory treatment of Chinese employee reprehensible because "intentional discrimination is a different kind of harm, a serious affront to personal liberty"). "Bad taste" is wiping one's nose on one's sleeve; it is not the kind of sustained, intentionally malicious racial intimidation of workers at issue here. Accordingly, the court finds that Local 416's conduct was reprehensible within the meaning of *BMW*.

Second, Local 416 complains that the 6:1 ratio of punitive damages to compensatory damages is unconstitutionally excessive. In *BMW*, the court approved of both 4:1 ratios and 10:1 ratios. 517 U.S. at 581. Here, the jury's ratio of 6:1 falls squarely within these constitutional awards. Moreover, the compensatory award of $1,500 per plaintiff is small, and "when the

---

the evidence at trial established that Plaintiffs attempted to "take advantage of [] preventive or corrective opportunities provided by the employer or to avoid harm." *Ellerth,* 524 U.S. at 765. For example, plaintiff Guzman sent a letter complaining of discrimination to Local 416 officials. Thus, even if Local 416 had not waived this defense, it would not have been able to make out one of the defense's two prongs—that Plaintiffs "unreasonably failed" to avail themselves of Local 416's internal anti-discrimination remedies.

compensatory damages award is small and does not already serve an admonitory function, the second guidepost—the ratio between punitive and compensatory damages—is of limited assistance in determining whether the amount of a jury's punitive damages award meets or exceeds [] goals of deterrence and retribution." *Hamlin v. Hampton Lumber Mills, Inc.*, 246 P.3d 1121, 1128 (Or. 2011). Finally, the 6:1 ratio is comparable to the ratios in *Swinton* (28:1), *Pavon* (6:5), and *Zhang* (7:1)—cases in which the punitive damages awards were based on similar racially discriminatory conduct. Therefore, the 6:1 ratio of punitive damages to compensatory damages is not unconstitutionally excessive.

### III. Conclusion

Local 416 has failed to show that the punitive damages award should be vacated or reduced.

IT IS THEREFORE ORDERED that Local 416's Renewed Motion for Judgment as a Matter of Law or Alternatively for Reduction in Amount of Punitive Damages (#157) is DENIED.

IT IS FURTHER ORDERED that, good cause appearing, Plaintiffs' counsel's Motion to Withdraw (#143) is GRANTED. Plaintiffs Bulmaro Mendez, Francisco Amaya, Juan Barrera, Jose M. Gonzalez, Alberto Lopez, Rual Lozano, and Leonardo Posada shall have thirty (30) days from the date of entry of this order to obtain substitute counsel and file a notice of substitute counsel with the court, or to file with the court their intention to proceed pro se. The Clerk of Court is directed to serve these plaintiffs with a copy of this order by certified mail, return receipt requested, at their last known addresses.

IT IS SO ORDERED.

DATED this 23rd day of August, 2013.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE